UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIFFANY LYNN BRIGGS,

                 Plaintiff,

v.                                                                           1:15-CV-0547
                                                                                 (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS         PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.            DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 13.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Tiffany Lynn Briggs ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 26, 1988. (T. 62.) She completed high school. (T. 144.) Generally, Plaintiff's alleged disability consists of back pain, learning disabilities, bipolar disorder, depression, and personality disorder. (T. 143.) Her alleged disability onset date is January 14, 2009. (T. 225.) Her date last insured is December 31, 2009. (T. 62.) She previously worked as an assembler, as a cashier, in fast food, and as a receptionist. (T. 144.)

### B. Procedural History

On November 2, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 62.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 14, 2013, Plaintiff appeared before the ALJ, Terence Farrell. (T. 32-61.) On March 26, 2013, ALJ Farrell issued a written decision finding Plaintiff not disabled under the Social Security Act prior to November 2, 2011, but became disabled on that date and has continued to be disabled through the date of his decision. (T. 11-31.) On February 27, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 17-25.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2009 and Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 17-18.)[1] Second, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease; affective disorder; learning disorder; personality disorder; and a history of alcohol and cannabis abuse. (T. 18.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 19-20.) Fourth, the ALJ found that prior to November 2, 2011, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work[2]. Specifically the ALJ determined Plaintiff could occasionally lift, carry, push and pull at least ten pounds; frequently lift, carry, push and pull less than ten pounds; stand and walk for at least two hours during a workday; and sit for six hours during a workday. (T. 20.) The ALJ determined that Plaintiff was able to perform simple, unskilled work. (*Id.*) Fifth, the ALJ determined that beginning on November 2, 2011, Plaintiff had the RFC to occasionally lift, carry, push, and pull at least ten pounds; frequently lift, carry, push, and pull less than ten pounds; and sit, stand, and walk in combination less than a full workday on a sustained basis. (T. 22.) The ALJ determined Plaintiff was able to

---

[1] The ALJ did not refer to a specific onset date at step one; however, the ALJ referred to Plaintiff's alleged onset date of October 1, 2009, the date listed on Plaintiff's application for benefits, in his step two and three determinations. (T. 18-19.) In a letter dated February 7, 2013, Plaintiff requested that her onset date be amended to January 4, 2009. (T. 225.)

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

3

perform simple, unskilled work with "no interaction with coworkers and supervision." (*Id.*) Sixth, the ALJ determined that prior to November 2, 2011, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24.) Seventh, and lastly, the ALJ determined that beginning on November 2, 2011, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 25.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues that the ALJ's RFC determination prior to November 2, 2011, was not supported by substantial evidence. (Dkt. No. 11 at 1-7 [Pl.'s Mem. of Law].)[3]

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's physical and mental RFC assessments were supported by substantial evidence. (Dkt. No. 12 at 6-15 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

---

[3] The pages of Plaintiff's brief are not numbered; therefore, this report and recommendation will refer to the page numbers assigned to the brief by the court's electronic filing system ("CM/ECF").

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### IV. ANALYSIS

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. The RFC is based on all the relevant medical and other evidence

of record, and takes into consideration the limiting effects of all of Plaintiff's impairments. *Id.*

In order to establish that she was eligible to receive SSD benefits, Plaintiff would have to show that she became disabled before December 31, 2009, her date last insured ("DLI"). 42 U.S.C. § 423; 20 C.F.R. §§ 404.130, 404.131, 404.315(a)(1). The earliest Plaintiff would be eligible for SSI benefits was December 2011, the month after the month in which she applied. 20 C.F.R. § 416.335.

Plaintiff first raises issue with her alleged onset date. In his decision, the ALJ stated that Plaintiff's onset date was October 1, 2009, which was the alleged onset date provided by Plaintiff in her application seemingly because that was the day she stopped working. (T. 62, 225.) In a letter dated February 7, 2013, Plaintiff requested that her onset date be amended to January 14, 2009. (T. 225.) Both dates were before Plaintiff's DLI of December 31, 2009. Plaintiff requested the January 14, 2009 date "[b]ased on her earnings as well as the medical evidence in the record from Columbia County Mental Health." (*Id.*) Plaintiff's letter then proceeded to outline the medical evidence in the record which she asserted supported her claim for disability. (T. 225-229.)

Here, the ALJ either rejected Plaintiff's request to amend the onset date, or it was an oversight. Regardless, any error on the ALJ's part to expressly acknowledge the earlier onset date was harmless. The ALJ stated in his discussion that "[t]he evidence does not support a finding of disability since the alleged onset date of October 1, 2009, *or any other date prior to December 31, 2009*, the date her insured status expired." (T.

7

21, emphasis added.) Therefore, even had the ALJ amended Plaintiff's onset date to January 14, 2009, he would have come to the same conclusion.

Plaintiff next asserts that "school records, mental health records and treatment records . . . prior to [her] date last insured . . . support a more severe residual functional capacity as determined by the ALJ." (Dkt. No. 11 at 5 [Pl.'s Mem. of Law].) Essentially, Plaintiff is arguing she is entitled to SSD benefits because her impairments became disabling prior to December 31, 2009, her DLI. The ALJ ultimately concluded Plaintiff's impairments became disabling on November 2, 2011, the date of her application for SSI benefits.

For the reasons stated herein, substantial evidence supported the ALJ's RFC determination that prior to November 2, 2011, Plaintiff could perform simple, routine, unskilled sedentary work.

**i.)    Physical RFC**

The ALJ's physical RFC prior to November 2, 2011 was supported by substantial evidence. On September 18, 2009, Plaintiff sought emergency room care for back pain which was worsening over the last three weeks. (T. 404.) It was noted that Plaintiff was in no apparent distress and a physical examination showed tenderness with spasm in the lumbar spine, pain with range of motion, and negative straight leg raises. (T. 405.) Objective medical imagining done at that time showed a "normal lumbar spine." (T. 407.) Plaintiff was diagnosed with low back pain and discharged home the same day in stable condition. (*Id.*)

On September 21, 2009, Plaintiff followed up with her primary care provider, Jeanne Pierce, PA. (T. 616.) PA Pierce observed that Plaintiff was in no acute

distress, had mild vertebral lumber tenderness, but no specific paraspinal muscle tenderness or spasm. (*Id.*) PA Pierce noted reduced range of motion in the low back, positive flip test, and negative straight leg raises. (*Id.*)

On October 9, 2009, Plaintiff sought treatment from her primary care provider for her low back pain. (T. 615.) PA Pierce observed that Plaintiff was in no acute distress, she had moderate lumbosacral tenderness, but no tension or spasm. (*Id.*) PA Pierce observed Plaintiff had moderate pain with flip test and straight leg raises, and had a normal gait. (*Id.*) PA Pierce recommended Plaintiff continue with pain medication, and referred her for an MRI. (*Id.*)

Plaintiff sought treatment for low back pain again on October 21, 2009. (T. 614.) Notations indicated that Plaintiff was scheduled for two MRIs, but missed both appointments. (*Id.*) PA Pierce noted on physical examination that Plaintiff had "moderate lumber or paraspinal muscle tenderness," no tension or spasm, negative flip test, negative straight leg raises, and normal gait. (*Id.*) Plaintiff was advised to obtain an MRI, continue with pain medication, and begin physical therapy. (*Id.*)

On November 11, 2009, Plaintiff sought emergency room care for low back pain. (T. 395.) On exam, Plaintiff's back was "markedly tender to palpation." (T. 397.) No medical testing such as an x-ray or MRI was performed. (T. 398.) Plaintiff was diagnosed with "muscle spasms" and discharged home in stable condition the following day. (*Id.*)

PA Pierce noted on November 18, 2009, that Plaintiff had an MRI which indicated an L3-L4 disc herniation with a broad based disc bulge with a superimposed central protrusion resulting in some moderate central canal stenosis. (T. 613.) Plaintiff

9

informed PA Pierce that she did not have numbness, tingling, weakness or instability. (*Id.*)  PA Pierce noted on physical examination that Plaintiff had "severe hypersensitivity to light palpation," reduced range of motion, negative flip test, negative straight leg raises, and a normal gait.  (*Id.*)

Although Plaintiff sought treatment from her primary care provider on other occasions in 2009, she did not complain of low back pain.[4]  The next notation regarding complaints of back pain was an emergency room record from January 1, 2010, the day after her DLI.  (T. 236.)

Plaintiff argues that the treatment notations from Columbia Memorial Hospital dated September 2009 and November 2009, MRI results from 2009, along with treatment notations from PA Pierce from 2009, support a more severe physical RFC determination.  (Dkt. No. 11 at 4-5 [Pl.'s Mem. of Law].)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991)

---

[4] On April 13, 2009, Plaintiff established care and complained of diabetes, depression and polycystic ovary syndrome. (T. 621.) On April 27, 2009, Plaintiff followed up regarding her depression and informed PA Pierce that she felt less depressed, had more energy and better concentration on Zoloft. (T. 620.) Plaintiff sought care on June 19, 2009 for pelvic pain. (T. 618.) On August 6, 2009, Plaintiff sought gynecological care. (T. 617.)

(reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, the ALJ determined that prior to November 2, 2011, Plaintiff could perform the physical requirements of sedentary work. (T. 20.) In his determination, the ALJ took into consideration the specific evidence which Plaintiff asserts supports greater functional limitations. (T. 21.) Although Plaintiff sought treatment for complaints of back pain in 2009 and notations indicated reduced range of motion and tenderness on palpitation, the record failed to indicate that she had greater limitations than those imposed by the ALJ.

In 2011 Plaintiff began seeking, and receiving, more treatment for her back pain (T. 466, 477, 515, 572, 576, 580, 582, 585, 587, 589.) The ALJ's physical RFC determination after November 2, 2011, was ultimately supported by the medical source statement dated March 12, 2013 and signed by John Tsou, M.D. (T. 675-680.)

As summarized by Defendant, even if Plaintiff's back impairment had been found disabling at an earlier point in 2011, Plaintiff would still not be eligible for SSD benefits because she did not become disabled prior to her DLI, and Plaintiff would not have been entitled to SSI benefits until after she applied on November 2, 2011. (Dkt. No. 12 at 11 [Def.'s Mem. of Law].) In sum, Plaintiff has failed to show that no reasonable factfinder could have come to the same conclusion of the ALJ regarding Plaintiff's physical impairments based on the medical evidence cited by Plaintiff from 2009.

**ii.)** **Mental RFC**

Plaintiff next argues that the ALJ's mental RFC determination prior to November 2, 2011 was not supported by substantial evidence. (Dkt. No. 11 at 3-6 [Pl.'s Mem. of Law].)

Plaintiff received mental health treatment at Columbia County Mental Health from January 2009 through October 2009. (T. 295.) A mental status examination performed on January 14, 2009 indicated that Plaintiff had good hygiene, was fully alert, had fair eye contact, her affect was flat, her motor function was slowed, her mood was dysphoric and irritable, her speech was slow, her thought content was relevant, she was oriented, her concentration was fair, her memory was fair/poor, her cognitive functioning appeared limited, her insight was fair, and her judgment was poor. (T. 316.) Plaintiff's discharge paperwork indicated Plaintiff's lowest GAF score was 55 and her highest was 70. (T. 295.)[5] Notations also indicated that Plaintiff was prescribed Zoloft by her primary care provider "with good effect." (*Id.*) It was further stated that although Plaintiff had violent fantasies and hit her stepfather, there were no other acts of aggression noted. (*Id.*)

The medical evidence in the record, provided by Columbia County Mental Health, was not inconsistent with the ALJ's mental RFC determination prior to November 2, 2011. Notations indicated that medication had a good effect on Plaintiff and Plaintiff's mental status examination did not support greater limitations than those imposed by the ALJ.

---

[5] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed. 2000)).

Plaintiff specifically argues that the ALJ incorrectly determined that Plaintiff's GAF score was 70. (Dkt. No. 11 at 6 [Pl.'s Mem. of Law].) To be sure, the notations from Columbia County Mental Health indicated that Plaintiff's "current" GAF score was 55 and her "highest" GAF score was 70. (T. 295.) Therefore, the ALJ did err in his statement that Plaintiff's GAF in July of 2009 was 70. (T. 22.) However, this error was harmless. First, a GAF score does not establish disability under the Regulations. *Ortiz Torres v. Colvin*, 939 F. Supp. 2d 172, 184 (N.D.N.Y. 2013) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764–65 (Aug. 21, 2000) ("The SSA has stated that the GAF score 'does not have a direct correlation to the severity requirements in our mental disorders listings.'")). Second, as stated by Defendant, a GAF score of 55 indicated moderate symptoms or moderate difficulties in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 34 (4th ed. 2000). A GAF score of 55 would not be inconsistent with the ALJ's mental RFC determination that prior to November 2, 2011, Plaintiff could perform the basic demands of simple unskilled work. And lastly, Plaintiff's GAF score was but one factor utilized by the ALJ in his overall mental RFC determination.

Plaintiff argues the ALJ erred in his conclusion that she was never psychiatrically hospitalized prior to October 1, 2009, or any other date prior to December 31, 2009. (Dkt. No. 11 at 5 [Pl.'s Mem. of Law].) Plaintiff points to evidence in the record that she was admitted to Four Winds Hospital in August of 2004. (T. 336-338.) Plaintiff appears to have misread the ALJ's decision. The ALJ stated in his determination, "[Plaintiff] was psychiatrically hospitalized for a brief period in 2004. However, she has never been

psychiatrically hospitalized during the period at issue." (T. 20.) The ALJ was aware of Plaintiff's hospitalization, but noted it was not during the period at issue. Therefore, the ALJ's later statement, that Plaintiff was never psychiatrically hospitalized, clearly related to the period at issue. (T. 21.)

Overall the ALJ's mental RFC determination prior to November 2, 2011, was supported by the medical evidence in the record, namely the treatment notations from Columbia County Mental Health. Although Plaintiff received mental health care and medication from PA Pierce in 2010, treatment was still after Plaintiff's DLI. Further, PA Pierce's notations did not indicate that Plaintiff's functional limitations were greater than those provided for in the RFC. For example, a mental status examination performed by PA Pierce in June of 2010 indicated that Plaintiff was alert and oriented, in no acute distress, pleasant, her speech was fluent, her comprehension was intact, her eye contact was normal, her affect was reactive, her thoughts were logical, her insight was good, her judgment was fair, and her recall was good. (T. 609-610.) In September of 2010, PA Pierce noted Plaintiff was alert, oriented, her speech was fluent, her comprehension was intact, her eye contact was normal, her mood was "pleasant, angry, irritable," her affect was "irritable, angry," her thoughts were logical, her insight was fair, her judgment was fair, and her recall was good. (T. 602-603.)

For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's RFC determination prior to November 2, 2011 was supported by substantial evidence in the record. The ALJ did not err in his review of the medical evidence prior to Plaintiff's DLI. Although the ALJ erroneously stated Plaintiff's GAF score was 70, not 55, this

error was harmless and further the ALJ properly considered Plaintiff's hospitalization in 2004.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:　　August 16, 2016

　　　　　　　　　　　　　　　　　　*[signature: Bill Carter]*
　　　　　　　　　　　　　　　　　　William B. Mitchell Carter
　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge